IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHANTOL STEELE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-6318** |
| | : | |
| **ENTERPRISE LEASING COMPANY OF PHILADELPHIA, LLC** | : | |

# MEMORANDUM

**MURPHY, J.** **October 28, 2026**

This is an employment discrimination case. Enterprise Leasing Company says that it fired Shantol Steele because she made an inappropriate comment about her supervisor Susan Davey's daughter. But Ms. Steele says that she never said anything about Ms. Davey's daughter. Rather, she was fired because of her race and in retaliation for complaining about Ms. Davey's racism and harassment. Enterprise asks for summary judgment because no reasonable jury could doubt its version of events. We disagree in part. Based on Ms. Steele's sworn testimony, a jury could reasonably find that Ms. Steele never made the statement about Ms. Davey's daughter and that Ms. Davey made racially discriminatory comments toward Ms. Steele. These facts, if accepted, would allow a jury to reasonably infer that racial discrimination proximately caused Ms. Steele's firing. Ms. Steele's discrimination claims will thus proceed to trial, where a jury will determine whether Ms. Davey or Ms. Steele is more credible. As to retaliation, however, Ms. Steele did not demonstrate any causal connection between her complaints about Ms. Davey and her firing, so we will grant Enterprise summary judgment on the retaliation claims.

## I. BACKGROUND

In May 2022, Shantol Steele began working at Enterprise as a customer service representative. DI 20-2 ¶ 3. Shortly after joining the company, Ms. Steele applied for a

promotion to the position of license and title clerk. *Id.* ¶ 15. She interviewed with Enterprise manager Susan Davey and Ms. Davey's boss Fenton Fitzpatrick. *Id.* ¶¶ 16, 19. Ms. Davey and Mr. Fitzpatrick ultimately decided to give Ms. Steele the promotion in April 2023. *Id.* ¶ 26. In this new position, Ms. Steele reported to Ms. Davey, *id.* ¶ 45, and the two did not get along. Throughout her first few months on the job, Ms. Steele made several errors that Ms. Davey had to correct, leading Ms. Davey to reprimand her. *E.g.*, *id.* ¶¶ 59, 76-77. Ms. Steele also struggled to meet her productivity goals, and Ms. Davey let her know. *Id.* ¶ 92. According to Ms. Steele, Ms. Davey's comments were not solely work-related — Ms. Steele, who is of Jamaican descent, testified that Ms. Davey also told her on multiple occasions to "go back to where you're from." *Id.* ¶ 111. Ms. Davey denies making those remarks. DI 20-3 at 196.[1]

In June 2023, Ms. Steele reached out to Enterprise human resources officer Caitline Maitz to discuss the issues between her and Ms. Davey, leading to a meeting between Ms. Maitz, Ms. Steele, and Ms. Davey. DI 20-2 ¶¶ 78, 84. At that meeting, Ms. Steele expressed that she felt Ms. Davey unfairly "nitpicked" her work and set unrealistic productivity expectations. *Id.* ¶¶ 85, 89. Ms. Steele also testified that she told Ms. Maitz about the "go back to where you're from" remarks and that Ms. Davey had "thr[own] stuff at [Ms. Steele's] desk and things fell . . . ." *Id.* ¶ 110. Ms. Davey, by contrast, provided Ms. Maitz with reports documenting Ms. Steele's performance and productivity issues. *Id.* ¶¶ 95, 101. At the end of the meeting, Ms. Maitz instructed Ms. Steele on the need to avoid distractions while working, and Ms. Steele agreed to meet her productivity expectations. *Id.* ¶ 105.

Ms. Steele also alleges that, at unspecified points during her employment, she had

[1] We adopt the sequential pagination of the CM/ECF docketing system.

additional conversations with Enterprise managers about her issues with Ms. Davey. She testified that she had a conversation with Mr. Fitzpatrick in which he referenced a "racial barrier" and a "cultural barrier" between her and Ms. Davey. DI 20-2 ¶ 171. Ms. Steele also testified that another Enterprise manager, Michael Kotary, similarly acknowledged a "cultural barrier." *Id.* ¶¶ 172-73. Mr. Fitzpatrick and Mr. Kotary both deny making such statements. *Id.* ¶¶ 171-73. Ms. Steele also testified that she used the word "discrimination" in a meeting with Mr. Fitzpatrick and Ms. Davey, *id.* ¶ 176, and that she told them about the "go back to where you're from" comment at least once, *id.* ¶¶ 178-80. Finally, Ms. Steele testified that she told Ms. Maitz that Ms. Davey was "harassing" her. *Id.* ¶ 178.

On October 16, 2023, Ms. Davey and Mr. Fitzpatrick issued Ms. Steele a written warning outlining various continuing performance issues. DI 20-2 ¶¶ 142, 144-45; DI 20-3 at 448. That same day, Ms. Davey and Mr. Fitzpatrick met with Ms. Steele to discuss the warning. DI 20-2 ¶ 143. According to Ms. Davey and Mr. Fitzpatrick, during that meeting Ms. Steele said that "she wished all the bad things Ms. Davey does to her, come back on" Ms. Davey's six-year-old daughter. *Id.* ¶ 157. Ms. Steele denies saying anything about Ms. Davey's daughter and claims that she told Ms. Davey, "[w]ould you like whatever you're doing to me, it would come back to you?" *Id.* ¶ 158; DI 20-3 at 72. Ms. Davey subsequently told Ms. Maitz that Ms. Steele made the aforementioned comment about her daughter. DI 20-2 ¶ 160. Over the next week, Enterprise conducted an investigation and concluded that Ms. Steele had made the comment as reported by Ms. Davey. *Id.* ¶ 167. Ms. Maitz and Mr. Kotary then decided to terminate Ms. Steele for the remark. *Id.* ¶ 167. Ms. Davey was not the decisionmaker with respect to Ms. Steele's termination. *Id.* ¶ 168.

Following her termination, Ms. Steele brought this suit against Enterprise. She alleges that Enterprise discriminated against her on the basis of race and national origin in violation of 42 U.S.C. § 1981 (Count I) and the Philadelphia Fair Practices Ordinance (PFPO) (Count III). DI 1 at 5-7.[2] She further argues that Enterprise retaliated against her in violation of both laws (Counts II and IV). *Id.* at 6-7.

## II. MOTION AT ISSUE

Following discovery, Enterprise moved for summary judgment on all of Ms. Steele's claims. As to the discrimination claims, Enterprise argues that Ms. Steele cannot make out a prima facie case because (1) her poor performance demonstrates she was not qualified for the license and title clerk position, and (2) she was not fired under circumstances giving rise to an inference of unlawful discrimination. DI 20-4 at 11-15. Enterprise further argues that even if Ms. Steele could make out a prima facie case, she cannot prevail because her comment about Ms. Davey's daughter provided a legitimate, non-discriminatory reason for Enterprise to fire her. *Id.* at 16-17. As to the retaliation claims, Enterprise starts by arguing that Ms. Steele did not engage in any protected conduct. *Id.* at 23-24. Enterprise further argues that even if Ms. Steele could establish protected conduct, she failed to show any connection between that conduct and her firing. *Id.* at 24-25. Finally, Enterprise reiterates that the comment about Ms. Davey's daughter provided a legitimate, non-retaliatory reason for Ms. Steele's firing. *Id.* at 26-27.

Ms. Steele opposes. As to discrimination, she argues that she makes out a prima facie case because (1) she was qualified for the title and license clerk position, as demonstrated by her

---

[2] Ms. Steele also pleaded harassment theories under Counts I and III of her complaint, but she has since abandoned those theories by failing to defend them in her opposition to summary judgment, DI 21-1.

recent promotion, and (2) Ms. Davey's "go back to where you're from" comments and hostile attitude give rise to an inference that her firing was motivated by discrimination. DI 21-1 at 8-9. Ms. Steele further argues Enterprise's proffered reason for firing her — the purported comment about Ms. Davey's daughter — is pretext for discrimination because she never made any such comment. *Id.* at 14-15. As to retaliation, Ms. Steele alleges that she engaged in protected conduct by raising her issues with Ms. Davey in conversations with Enterprise managers. *Id.* at 10-12. She further argues that the timing of her termination combined with Ms. Davey's antagonism towards her shows a causal connection between those conversations and her firing. *Id.* at 13. Finally, she argues that the comment about Ms. Davey's daughter is not a legitimate non-retaliatory reason for her firing because she never made it. *Id.* at 14-15.

## III. LEGAL STANDARDS

We grant summary judgment when the movant demonstrates "that there is no genuine dispute as to any material fact" such that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a fact to be "material," it needs to be capable of "affect[ing] the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute over a material fact to be "genuine," there must be evidence that would allow a reasonable jury to side with the non-movant as to that fact. *See id.* In determining whether there is a genuine issue of material fact that precludes summary judgment, we "examine the evidence of record in the light most favorable" to the non-movant and "resolve all reasonable inferences" in her favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). But once the movant points to record evidence that it submits demonstrates its entitlement to summary judgment, the non-moving party must come forward with her own evidence to create a genuine

dispute — "bare assertions, conclusory allegations or suspicions" are not enough. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

## IV. DISCUSSION

### A. Factual disputes preclude summary judgment on Ms. Steele's discrimination claims.

Section 1981 and the PFPO both prohibit racial discrimination in employment. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975) (citing 42 U.S.C. § 1981); Phila. Code § 9-1103(1)(a). While only the PFPO prohibits national-origin discrimination as such, national-origin discrimination is a type of race discrimination that Section 1981 prohibits when, as here, it is based on ancestry or ethnic characteristics rather than birthplace. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *id.* at 614 (Brennan, J., concurring). In the absence of direct evidence of discrimination, Section 1981 and PFPO discrimination claims can be proven via the *McDonnell Douglas* burden-shifting framework. *Tomaszewski v. City of Philadelphia*, 460 F. Supp. 3d 577, 593 (E.D. Pa. 2020) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) & *Stewart v. Rutgers, The State University*, 120 F.3d 426, 432 (3d Cir. 1997)).[3]

---

[3] We note that the *McDonnell Douglas* framework should arguably be applied more stringently for Section 1981 claims than for PFPO claims. Section 1981 requires that discrimination be a "but for" cause of the adverse action. *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 589 U.S. 327, 333 (2020). Though the Pennsylvania Supreme Court does not appear to have addressed the PFPO causation standard, we think there is a fair chance that it would interpret the PFPO to incorporate the "more forgiving" "motivating factor" test applicable in Title VII discrimination cases. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657 (2020).

How these potentially different causation standards would affect the application of *McDonnell Douglas* is not obvious — the relationship between *McDonnell Douglas* and the underlying anti-discrimination statutes is unclear. *See Hollis v. Morgan State University*, 153 F.4th 369, 391 (4th Cir. 2025) (Quattlebaum, J., concurring). Further complicating the picture at summary judgment is the tension between Rule 56 (which places the burden on the movant to establish the lack of any dispute of material fact) and the *McDonnell Douglas* framework (which places the burden on the employee to establish a prima facie case and pretext even when they are

In opposing summary judgment, the plaintiff must first establish a prima facie case by pointing to evidence that would allow a reasonable jury to find by a preponderance that (1) she is a member of a protected class, who is (2) qualified for her position, and who (3) suffered an adverse employment action, under (4) circumstances giving rise to an inference of discrimination. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (outlining the elements of the prima facie case); *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (noting the reasonable-jury standard applies to the employee non-movant at summary judgment). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Sarullo*, 352 F.3d at 797. Once the employer comes forward with such a reason, the burden shifts back to the plaintiff to point to evidence that would allow a reasonable jury to find by a preponderance that the proffered reason is a pretext for discrimination. *See id.*; *Burton*, 707 F.3d at 426-27.

***Prima Facie Case.*** Ms. Steele has made out a prima facie case of discrimination. The burden to make out a prima facie case is "not onerous." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). There is no dispute that Ms. Steele is a member of a protected class and that her firing was an adverse employment action. So if she can point to evidence that she was qualified for the license and title clerk position and was fired under circumstances giving rise to an inference of discrimination, she will make out a prima facie case. She can do both.

---

the non-movant). *Cf. Ames v. Ohio Dept. of Youth Services*, 605 U.S. 303, 322-23 (2025) (Thomas, J., concurring).

Here, however, we need not decide whether *McDonnell Douglas* should be applied more strictly to Section 1981 claims than PFPO claims because Enterprise has not argued for this stricter application.

As to the "qualified" prong, we evaluate the plaintiff's "objective job qualifications." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990)). This part of the prima facie case acts as "a screening mechanism [] to weed out clear cut cases such as jobs requiring certain levels of educational degrees, licenses, etc." *Silver v. Am. Inst. of Certified Pub. Accountants*, 2005 WL 2000154, at *3 (D.N.J. Aug. 16, 2005), *aff'd,* 212 F. App'x 82 (3d Cir. 2006). Even where a plaintiff lacks some objective qualifications, "satisfactory performance of duties, leading to a promotion, [] establish[es] a plaintiff's qualification for a job." *Hugh v. Butler County Fam. YMCA*, 418 F.3d 265, 268 (3d Cir. 2005). Here, Enterprise does not contend that Ms. Steele lacked any objective qualification such as a degree or certification needed to perform the duties of a license and title clerk. Moreover, Ms. Steele was promoted to the position after nearly a year working for Enterprise as a customer service representative, which is alone sufficient for a reasonable jury to find her qualified. *See id.* at 268.

Enterprise argues that Ms. Steele was not qualified because of her various performance issues. DI 20-4 at 11-12. But "performance issues that may arise after a promotion [are] 'more logically a defense that is raised'" at the second stage of *McDonnell Douglas* "rather than [as] evidence of the plaintiff being unqualified" at the prima facie stage. *Lassiter v. Children's Hosp. of Philadelphia*, 131 F. Supp. 3d 331, 342 (E.D. Pa. 2015) (quoting *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989)). That is, "[w]hether or not plaintiff performed his job to his employer's satisfaction" is a distinct question from whether they were qualified for the position and is thus "addressed in the later steps of the *McDonnell Douglas* analysis." *Clark v. Kraft Foods, Inc.*, 2013 WL 2245638, at *4 (E.D. Pa. May 22, 2013) (citing *Weldon v. Kraft, Inc.,* 896

F.2d 793, 798 (3d Cir. 1990)); *see Silver*, 2005 WL 2000154, at *3. Ms. Steele's performance issues thus fail to demonstrate that she was unqualified for the position.

Ms. Steele has also met the other contested element of her prima facie case — whether there are circumstances giving rise to an inference of discrimination. She does so through her testimony that Ms. Davey repeatedly told her to "go back to where [she] came" from. A reasonable jury could easily find these to be "statements . . . by [the plaintiff's] supervisor[] suggesting racial animus." *McFadden v. Whole Foods Mkt. Group, Inc.*, 2021 WL 736899, at *7 (E.D. Pa. Feb. 25, 2021) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)). A reasonable jury could further infer that this racial animus motivated Ms. Davey to falsely report Ms. Steele to higher-ups for making the inappropriate comment about Ms. Davey's daughter — the event that ultimately led to Ms. Steele's firing.

Enterprise makes two counterarguments worth discussing. First, Enterprise argues that Ms. Maitz and Mr. Kotary were the decisionmakers with respect to the firing, so Ms. Davey's comments cannot give rise to an inference of discrimination. DI 20-4 at 15. But even if a supervisor who is the alleged discriminator is not the ultimate decisionmaker, an employer is still liable for the supervisor's discrimination where it proximately causes the adverse employment action. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 420-21 (2011). Here, a jury could find that Ms. Davey's discriminatory animus proximately caused the firing because the decisionmakers directly relied on Ms. Davey's reporting of a comment that Ms. Steele denies making. *See McKenna v. City of Philadelphia*, 649 F.3d 171, 178 (3d Cir. 2011) (finding proximate causation on analogous facts in the retaliation context).

Second, Enterprise argues that Ms. Davey being involved in Ms. Steele's initial

promotion to the license and title clerk position less than a year before her firing undermines any inference of discrimination. DI 20-4 at 15 (citing *Lynn v. Bank of New York Mellon*, 180 F.4th 133, 141 (3d Cir. 2026)). While *Lynn* suggests that the hirer and the firer being the same person can serve as evidence weighing against an inference of discrimination, it does not suggest that a hirer could never discriminate against the employee. *See Lynn*, 180 F.4th at 141. And here, unlike in *Lynn*, there is evidence that a jury could reasonably find outweighs Ms. Davey's role as Ms. Steele's hirer — specifically, evidence of racially discriminatory comments.[4]

***Legitimate non-discriminatory reason and pretext.*** Enterprise's proffered legitimate, non-discriminatory reason for firing Ms. Steele is that she "threaten[ed] Ms. Davey's young daughter in violation of Enterprise's" policies. DI 20-4 at 16. Ms. Steele does not dispute that the alleged comment about Ms. Davey's daughter would provide a legitimate basis to fire someone, but she argues that this reason is pretextual given that she never made the comment. DI 21-1 at 14. She further argues that the real reason she was fired was Ms. Davey's discriminatory animus against her. *Id.* at 14-15.

To avoid summary judgment at the pretext stage of *McDonnell Douglas*, it is sufficient for a plaintiff to create a genuine factual dispute as to whether the employer's proffered reason is false. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). That is so "because the factfinder

---

[4] Enterprise also argues that Ms. Steele cannot demonstrate an "inference of discrimination" because "Shaquan Ellis, who was the other License and Title Clerk, Ms. Steele's coworker, and Ms. Davey's other direct report, is also Black and there is no evidence in the record regarding any employee that replaced Ms. Steele." DI 20-4 at 15. This argument — which is not supported by any legal authority — is not sufficiently clear for us to address. To the extent Enterprise means to argue that Ms. Steele needed to show she was replaced by someone outside the protected class, that is not the law. *Lynn*, 180 F.4th at 141 ("[B]eing replaced by someone outside the plaintiff's protected class is not necessary to raise an inference of discriminatory animus").

may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons . . . ." *Id.* at 764. In other words, if a reasonable jury could find that the only non-discriminatory explanation that the employer can offer to rebut the plaintiff's prima facie case is false, then it could necessarily find that discrimination was the real reason for the firing. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) (en banc).

Here, we agree with Ms. Steele that a reasonable jury could find Enterprise's stated reason for her firing — that Ms. Steele made a comment about Ms. Davey's daughter — to be false. Ms. Steele says she never made a comment about Ms. Davey's daughter. Ms. Davey and Mr. Fitzpatrick say she did. Were we to "determine credibility, weigh the evidence, and draw justifiable inferences of fact," *Anderson*, 477 U.S. at 253 (quoting *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947)), we might well conclude that the weight of the evidence supports Ms. Davey and Mr. Fitzpatrick's version of events. But as the dispute centers essentially on the credibility of Ms. Steele on the one hand and Ms. Davey and Mr. Fitzpatrick on the other, we leave those determinations to the jury. *See id.*; *Kansas v. Ventris*, 556 U.S. 586, 594 n.* (2009) ("Our legal system . . . is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses . . . ."); *Ettinger v. Johnson*, 556 F.2d 692, 697 (3d Cir. 1977) ("The general and well settled rule is that the court should not resolve a genuine issue of credibility at the hearing on the motion for summary judgment . . . .").

Enterprise's attempts to sidestep this factual dispute are unpersuasive. Enterprise first argues that there is no genuine dispute about whether Ms. Steele made the comment because the

only evidence that she did not make it is her own "unsupported" testimony that is uncorroborated by a contemporaneous writing. DI 20-4 at 17. But Ms. Steele's sworn deposition testimony cannot simply be written off as "unsupported." *See Paladino v. Newsome,* 885 F.3d 203, 209-10 (3d Cir. 2018) (noting plaintiff's sworn testimony, even though self-serving, created a genuine issue of material fact). That is what trials are for. Nor does Ms. Steele's lack of a contemporaneous writing change anything — there is no reason why Ms. Steele would have contemporaneously memorialized *not* making a statement.

Enterprise also appears to argue that even if there is a genuine dispute over whether she made the statement, that dispute is immaterial because it is undisputed that the ultimate decisionmakers fired her because they *believed* she made the statement. DI 20-4 at 17 (citing *Kim-Foraker v. Allstate Ins. Co.*, 834 F. Supp. 2d 267, 281 (E.D. Pa. 2011)). Enterprise is correct that a decisionmaker's belief about an employee, even if mistaken, can generally provide a legitimate non-discriminatory reason for firing. *Kim-Foraker*, 834 F. Supp. 2d at 281. But that general rule does not apply when that mistaken belief was proximately caused by a non-decisionmaker who was motivated by discriminatory animus to create the misapprehension. *See Staub*, 562 U.S. at 420. As discussed above, a reasonable jury might find that Ms. Davey's discriminatory animus motivated her to falsely report that Ms. Steele had made a comment about Ms. Davey's daughter, proximately causing her firing. There is thus a genuine dispute of material fact precluding summary judgment on Ms. Steele's discrimination claims.

**B. We will grant summary judgment in favor of Enterprise on Ms. Steele's retaliation claims.**

Both Section 1981 and the PFPO make it unlawful to retaliate against employees for complaining about race discrimination. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451-52

(2008) (citing 42 U.S.C. § 1981); Phila. Code § 9-1103(1)(g). Absent direct evidence, a plaintiff may prove retaliation claims under Section 1981 and the PFPO using the *McDonnell Douglas* framework. *Carvalho-Grevious v. Delaware State University*, 851 F.3d 249, 257 (3d Cir. 2017); *Joseph v. Contl. Airlines, Inc.*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000). The plaintiff bears the initial burden to establish a prima facie case. To oppose summary judgment, she points to evidence from which a jury could reasonably conclude that (1) she engaged in protected activity, (2) her employer took adverse action against her, and (3) that adverse action was causally connected to the protected activity. *Carvalho-Grevious*, 851 F.3d at 257. Once the plaintiff establishes her prima facie case, the employer must come forward with a legitimate, non-retaliatory reason for the firing. *Id*. The burden then shifts back to the plaintiff to show that a reasonable jury could find that reason to be pretext for retaliation. *Id*.

Ms. Steele's retaliation claim falters at the prima facie stage. We will accept for sake of argument that Ms. Steele engaged in protected conduct by reporting Ms. Davey's "regular discriminatory treatment and harassing comments." DI 21-1 at 11. Even with this assumption, Ms. Steele still cannot establish a prima facie case because she cannot show any causal connection between her protected activity and her firing. A plaintiff may demonstrate this causal connection using any evidence in the record. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). Here, Ms. Steele argues that evidence of "a pattern of antagonism coupled with timing" shows a causal connection. DI 21-1 at 10-11 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 268 (3d Cir. 2007)); DI 21-1 at 12-13. Our review of Ms. Steele's timing argument is complicated by her failure to identify when much of her protected conduct occurred. DI 21-1 at 11-12. But we need not address the timing issue because Ms.

Steele cannot demonstrate a "pattern of antagonism" in any event.

Ms. Steele's primary evidence of a "pattern of antagonism" is her testimony that Ms. Davey was "nitpicking," "discriminating," and "harassing" her throughout her employment. DI 21-1 at 13. But for "a pattern of antagonism" to be evidence of retaliation, it needs to begin (or at least intensify) *after* the protected conduct — that is, it needs to be "intervening" between the conduct and the adverse action. *Farrell*, 206 F.3d at 281; *Woodson v. Scott Paper Co*., 109 F.3d 913, 920-21 (3d Cir. 1997). Antagonizing behavior that began before any protected conduct and simply continued unchanged after it is not probative of retaliation. *See Randler v. Kountry Kraft Kitchens*, 2012 WL 6561510, at *12 (M.D. Pa. Dec. 17, 2012); *see also Conard v. Pennsylvania State Police,* 2022 WL 58543, at *2 (3d Cir. Jan. 6, 2022) ("To show retaliation, [Plaintiff] thus must show that her constitutionally protected activity motivated some escalation in [Defendant's] conduct beyond this preexisting animosity."). Here, Ms. Steele offers no evidence that Ms. Davey's "antagonism" against her intensified after Ms. Steele engaged in protected conduct. There is thus no basis to conclude that Ms. Davey's antagonism towards Ms. Steele was causally connected to her protected conduct.

Ms. Steele's other two examples of purported antagonism are even less persuasive. First, Ms. Steele points to her testimony about a conversation she had with a Hispanic Enterprise employee, in which that employee recounted Ms. Davey also telling her to "go back to where she is from." DI 21-1 at 13. That statement is inadmissible hearsay and thus not properly considered on a motion for summary judgment. *Jacobs v. City of Philadelphia*, 2024 WL 1252338, at *3 n.2 (E.D. Pa. Mar. 21, 2024), *aff'd*, 2025 WL 560626 (3d Cir. Feb. 20, 2025). Even if we could consider the statement, we fail to see how it constitutes antagonism against Ms. Steele as

opposed to the other employee, or what it has to do with Ms. Steele's protected conduct. Second, Ms. Steele makes a vague reference to "antagonism from numerous managers." DI 21-1 at 13. Without citations to the record or a more specific explanation, we cannot credit this argument.

## V. CONCLUSION

We grant Enterprise's motion for summary judgment on Ms. Steele's retaliation claims under Section 1981 and the Philadelphia Fair Practices Ordinance (Counts II and IV). We deny Enterprise's motion for summary judgment on Ms. Steele's discrimination claims under those laws (Counts I and III). An appropriate order will follow.